# IN RE VERLEY.

PATENTS; ANTICIPATION.

Where the claim in an application for a patent for an apparatus for producing ozone by the use of electrical currents of high frequency, covered an ozone apparatus in combination with particular means for producing currents of high frequency, it was *held,* affirming a decision of the Commissioner of Patents rejecting the application, that the claim was anticipated by two former patents, one disclosing the high-frequency apparatus used with electric lights, and the other disclosing an ozone apparatus supplied by a different form of high-frequency apparatus, and, also, that there was no invention in using a Herzian exciter in an ozone apparatus when it had been used in other devices to obtain electric currents of high frequency, and the ozone patent had described the use of devices of that class with an ozonizer.

No. 192. Patent Appeals. Submitted March 11, 1902. Decided April 2, 1902.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from the decision of the Commissioner of Patents, wherein he refuses to grant a patent to the applicant, Albert Verley, of Courbevoie, France, for an alleged invention in electrical appliances for the production of the gaseous element known as ozone. The claim of invention is described as follows:—

" In an electrical machine for producing ozone, the combination with the secondary circuit of a transformer, of a condenser connected in and adapted to be charged by said circuit, and an effluvium apparatus, into which said condenser discharges its electricity, one plate of the condenser being

metallically continuous with one plate of the effluvium apparatus, and the other plate of the condenser having an interruption or air-space in its connection with the other plate of the effluvium apparatus."

Ozone, which is found to be useful in the manufacture of perfumes and flavors, is produced by electrical action as the result of exceedingly rapid oscillations, or oscillations of high frequency, as they are called, in an electric circuit; and the volume of ozone developed is in proportion to the frequency of oscillation. To effect the desired result the applicant uses what is known as the "Herzian exciter," or airspace, which gives rise to electrical waves of very short duration and very great frequency, amounting to millions and even billions in a second of time; and he locates his condenser, exciter and ozonizer all in the secondary circuit of the transformer. He has received a German patent for this appliance, apparently since the date of his application in the present proceeding. Whether he has received one from his own country, France, does not appear.

The application here has been rejected on the ground of anticipation of the invention in three several patents issued to Nikola Tesla — one, No. 454,622, dated June 23, 1891, purporting to be for a "system of electric lighting;" a second, No. 462,418, issued November 3, 1891, purporting to be for a "method of and apparatus for electrical conversion and distribution;" and the third, No. 568,177, issued September 22, 1896, which is specifically for an "apparatus for producing ozone." The first and second of these patents show appliances of the same general character as that of the present applicant. The appliance of the third patent is somewhat different; but the specifications of this patent refer to the two previous patents as showing appliances of the same kind that might be used for the same purpose.

All the tribunals of the Patent Office held that, in view of these patents to Tesla, there was now no patentable novelty in taking the appliances of the first and second patent and using them for the same purpose as that of the third patent, as Tesla himself had indicated might be done; and this they held was all that the present applicant did.

From the decision of the Commissioner of Patents to that effect, the applicant has appealed to this court.

*Mr. Philip Mauro* and *Mr. Reeve Lewis* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant's contention is mainly that he uses the Herzian exciter to produce ozone, while Tesla does not use that means for the same purpose, but only electrical currents of ordinary high frequency. But inasmuch as Tesla in his first and second patent does use the Herzian exciter, and that in the specifications of his third patent he says that the appliances of the other two patents may also be used for the production of ozone, as well as the special appliance which he does use for that special purpose, we concur with the tribunals of the Patent Office in holding that this was a plain anticipation of Verley's idea. An attempt is made to distinguish between the Herzian exciter and other apparatus for the production of electric currents of high frequency, and between electrical currents having oscillations of twenty or thirty thousand a second and those having billions of such oscillations; but we fail to find any warrant for the distinction. The difference is plainly one of degree, not of kind. Moreover, Tesla expressly refers to currents of high frequency having many millions of oscillations a second. We can, therefore, find no patentable novelty in the use of the Herzian exciter to produce ozone.

There would seem to be some advantage in the applicant's location of his condenser, exciter and ozonizer in the secondary circuit of his transformer, instead of having them in the primary circuit, where Tesla places them. It would seem that this special location tends to prevent the formation of arcs across the exciter or air-space, and that such prevention is desirable in the production of ozone. If there is patentable novelty in this arrangement, as possibly there may be,

we presume that a patent would be allowed upon application and specifications distinctly directed thereto. The question of the patentability of the appellant's device in that special regard does not seem to have been passed upon by the Commissioner of Patents, or by the other tribunals of the Patent Office, except by their general refusal of a patent, notwithstanding that the point seems to have been made before all of them by the applicant's counsel. But we have no means of ascertaining on this appeal whether the result of the appellant's location of his condenser would be as claimed, or whether there is such superiority in it over Tesla's device as would justify its being regarded as patentable invention. There are modes by which this can be determined; and we think that the appellant should be remitted to some of those modes for the establishment of this special claim, if he can establish it.

It is our conclusion that no sufficient reason has been shown to induce us to disturb the decision of the Commissioner of Patents, and that the decision should be affirmed. It is accordingly hereby *affirmed. The clerk of the court will certify this opinion and the proceedings of the court in this cause to the Commissioner of Patents according to law.*